IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GLENN ABNEY, | ) | |
| | ) | Civil Action No. |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| MEGAMART, INC, | ) | |
| | ) | |
|    Defendant. | ) | |
| _____ | ) | |

## COMPLAINT FOR DAMAGES

**COMES NOW** Plaintiff Glenn Abney (hereinafter "Plaintiff" or "Mr. Abney"), and files this lawsuit against Defendant MegaMart, Inc. (hereinafter "Defendant"), and shows the following:

## I.  Nature of Complaint

### 1.

Plaintiff brings this action to obtain full and complete relief and to redress the unlawful employment practices described herein.

### 2.

This action seeks declaratory relief, liquidated and actual damages for Defendant's failure to pay federally mandated overtime wages to Plaintiff in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 *et*

*seq.* (hereinafter "FLSA") during Plaintiff's employment with Defendant (hereinafter referred to as the "relevant time period").

## II.  <u>Jurisdiction and Venue</u>

### 3.

The jurisdiction of this Court is invoked pursuant to 29 U.S.C. §216(b), and 28 U.S.C. §1343(4).

### 4.

Defendant MegaMart, Inc. is a Georgia corporation, and the unlawful employment practices described herein occurred at 2100 Pleasant Hill Road, Duluth, Georgia, 30096. Accordingly, venue in this Court is proper pursuant to 29 U.S.C. §216(b); LR 3, Northern District of Georgia.

## III.  <u>Parties</u>

### 5.

Plaintiff is a resident of the State of Georgia.

### 6.

Plaintiff worked for the Defendant from 9/25/2010 through approximately 9/15/2011 (hereinafter "the relevant time period").

### 7.

Plaintiff was an "employee" (as defined under FLSA §3(e), 29 U.S.C.

§203(e)) for Defendant.

8.

Plaintiff performed non-exempt labor for Defendant within the last three (3) years.

9.

Defendant employed the named Plaintiff during the relevant time period.

10.

During the relevant time period, Plaintiff worked an amount of time that was more than forty (40) hours per workweek and was not paid the overtime wage differential.

11.

Defendant MegaMart, Inc. is a private employer engaged in interstate commerce, and its gross revenues exceed $500,000.00 per year.

12.

Defendant MegaMart, Inc. is an "employer" within the definition of FLSA §3(d), 29 U.S.C. §203(d).

13.

Defendant is governed by and subject to FLSA §7, 29 U.S.C. §204 and §207.

## IV. <u>Facts</u>

14.

Plaintiff Mr. Abney worked for the Defendant MegaMart, Inc., within the past three (3) years.

15.

Defendant MegaMart, Inc. is a chain of grocery "mega" stores, first established in South Korea in approximately 1995.

16.

On or about December 12, 2007, Defendant MegaMart, Inc. was established as a business entity with the Georgia Secretary of State, and has continued to transact business as a grocery "mega" store, located at 2100 Pleasant Hill Road, Duluth, Georgia, 30096, from that time until the present day.

17.

At all times relevant to this action, Mr. Abney's direct supervisor and manager was the Assistant Manager for Defendant MegaMart, Inc., Mr. (first name unknown) Yung (hereinafter "Mr. Yung").

18.

On or about September 25, 2010, Mr. Abney was hired by Defendant MegaMart, Inc., as a Meat Cutter for Defendant.

19.

As a Meat Cutter for Defendant MegaMart, Inc., Mr. Abney's duties consisted of non-exempt work involving, primarily, cutting and preparing meat, servicing customers, filling customer orders, and tending to the routine upkeep of the Meat Department at Defendant MegaMart, Inc.

20.

As a Meat Cutter, Mr. Abney was paid as a non-exempt hourly employee, and received time-and-a-half overtime compensation for the hours he worked over forty (40) in a week.

21.

On or about December 8, 2010, Mr. Abney received a promotion offer letter from Defendant MegaMart, Inc. (hereinafter "promotion offer letter"), offering to promote Mr. Abney from Meat Cutter to Meat Department Manager.

22.

The promotion offer letter provided that Mr. Abney would be paid on a salary basis with an offered salary of $40,040.00 per year, providing further that this salary was intended to compensate Mr. Abney at a rate of approximately $14.00 per hour, for fifty (50) scheduled hours of work per week.

23.

The promotion offer letter provided a written description of the responsibilities of the Meat Department Manager; responsibilities which Mr. Abney would purportedly have assumed upon accepting Defendant's promotion offer.

24.

The promotion offer letter provided that the Meat Department Manager responsibilities were purportedly to include: (1) assisting MD 1 Team Manager; (2) profitability, expense control, inventory control, buying and merchandising; (3) visiting the competition on a regular basis and reacting to current industry trends; and, (4) coordinating/supervising department products and personnel.

25.

Shortly after receiving Defendant's promotion offer letter, Mr. Abney accepted Defendant's promotion offer, and, on or about December 13, 2010, was reclassified by Defendant as a salaried employee with the title of Meat Department Manager.

26.

Despite having accepted the promotion offer and assuming the title of Meat Department Manager, Mr. Abney's day-to-day duties and responsibilities remained

primarily unchanged from his duties and responsibilities while acting as a non-exempt hourly Meat Department employee.

27.

With only the minimal and non-substantive exceptions provided and detailed herein, Mr. Abney's alleged "promotion" to Meat Department Manager was a nominal promotion only; that is, Mr. Abney was given none of the independent discretion, authority, or management powers and duties of the Meat Department Manager.

28.

More specifically, while Mr. Abney was allegedly to have assumed supervisory powers as part of his role as Meat Department Manager, Mr. Abney had little, if any, supervisory authority over the Meat Department employees and personnel.

29.

By way of example, one of the identified supervisory responsibilities of the Meat Department Manager was to prepare the Meat Department employee schedule; however, rather than generating the schedule on his own, Mr. Abney was specifically directed by his supervisor Mr. Yung regarding which employees to schedule and the corresponding shifts to assign to each.

30.

Managers for other departments within Defendant MegaMart were given independent discretion to generate their own department employee schedules.

31.

On any occasion that Mr. Abney presented an employee schedule that differed even slightly from Mr. Yung's specific directions, Mr. Yung would change the schedule to reflect his own preferences.

32.

By way of further example, one of the identified management responsibilities of the Meat Department Manager was to "plan, order, and process meat products according to work plan and standards to maximize sales and gross profit;" however, while Mr. Abney was occasionally directed by Mr. Yung to place Meat Department orders, Mr. Abney was also specifically directed by Mr. Yung as to which products to order, in what amounts, at what frequency, and from what sources to order said products.

33.

During his time as the Meat Department Manager, Mr. Abney was not given any decision-making authority or independent discretion in determining what products to order, or regarding the process and procedure for completion of the

ordering, receiving, unloading, storage, or rotation of meat products and Meat Department merchandise.

34.

By way of further example, an additional identified management responsibility of the Meat Department Manager was to "plan and implement shop merchandising, layout and customer traffic flow;" however, on any occasion when Mr. Abney attempted to make suggestions regarding the planning and implementation of shop merchandising, product display, or the customer traffic flow, his suggestions were disregarded by his supervisor, Mr. Yung.

35.

Instead, Mr. Abney was given specific instructions by Mr. Yung regarding all aspects of the planning and implementation of shop merchandising, product display, and the customer traffic flow; Mr. Yung also gave instructions of a similar nature and manner to non-exempt hourly Meat Department employees.

36.

By way of further example, an additional identified management responsibility of the Meat Department Manager was to "plan, forecast, report on sales, costs and business performance . . . manage cash and payment systems . . . [and] manage costs and overheads, and all factors affecting the profitable

performance of the shop;" however, Mr. Abney rarely, if ever, performed any aspect of these functions outside the non-exempt hourly capacity of printing price labels for customer orders in the Meat Department.

37.

Additionally, whereas other department and store managers were given regular access to Defendant MegaMart's on-site management offices and computer systems, Mr. Abney was not given any access to the management offices or the computer systems for any management or Meat Department related purposes.

38.

Instead, at any point when Mr. Abney had a question regarding information contained in the computer systems, he was required to bring his request to Mr. Yung; if Mr. Yung granted the request, only then would he permit Mr. Abney to enter the management office for the specific and limited purpose of viewing the requested information on the computer.

39.

During any such occasion, Mr. Abney was not even permitted to sit at the computer, and instead, Mr. Yung would operate the computer and would allow Mr. Abney to look over his shoulder at the information displayed on the computer screen.

40.

By way of a final example, an additional identified management responsibility of the Meat Department Manager was to "recruit staff, train and develop staff," including, handling Meat Department employee "appraisals, discipline, grievance[s];" however, during the entirety of his employment with Defendant MegaMart, Inc., Mr. Abney was not given the authority or capacity to handle employee appraisals, discipline, or grievances.

41.

All Meat Department employee appraisals, disciplinary actions, grievances, and other Meat Department employee personnel requests were handled exclusively by Mr. Yung.

42.

Indeed, the Meat Department employees reported to Mr. Yung with all personnel issues and regarded Mr. Yung as their manager; this was the case until approximately June 2011 when, still during Mr. Abney's alleged tenure as the Meat Department Manager, Mr. Yung brought in a Korean individual by the name of Mr. (first name unknown) Kim (hereinafter "Mr. Kim"), and, in so doing, directed all the Meat Department employees to regard Mr. Kim as their manager from that point moving forward.

43.

Additionally, Mr. Abney was never given the authority or capacity to hire new Meat Department employees or to fire existing Meat Department employees; nor was Mr. Abney ever given a means to make official recommendations or suggestions to Defendant MegaMart, Inc. regarding the same.

44.

During the relevant time period, Defendant MegaMart did hire an acquaintance of Mr. Abney's, Mr. Kenny Crumble (hereinafter "Mr. Crumble"), who Mr. Abney knew from a former position he held while employed with Fresh Market.

45.

However, at the time that Mr. Crumble applied for the position with Defendant MegaMart, Mr. Abney had no knowledge of Mr. Crumble's application for employment with Defendant and did not have any participation in the subsequent interview and hiring process of Mr. Crumble.

46.

On the contrary, it was not until after Defendant MegaMart had already offered Mr. Crumble a position that Mr. Abney was even aware of Mr. Crumble's application for employment with Defendant MegaMart; moreover, based on Mr.

Abney's knowledge and belief, Defendant MegaMart was similarly unaware of Mr. Abney's connection to Mr. Crumble at the time that Mr. Crumble was hired.

47.

Quite opposite from having hiring authority, while Mr. Abney continually requested that Mr. Yung and Defendant MegaMart hire additional Meat Department employees, Mr. Abney's requests were routinely disregarded.

48.

Mr. Abney made the repeated requests that Mr. Yung hire more Meat Department employees because the Meat Department was severely short on staff, and particularly, short on staff able to operate the meat cutting machines.

49.

On the occasions when Mr. Abney would request that Mr. Yung hire more meat cutting employees for the Meat Department, indicating that the Meat Department was "too busy" and that he was spending all of his time cutting and preparing meat, Mr. Yung would deny Mr. Abney's request, and would further respond that MegaMart was "not going to hire another American meat cutter" and that he, Mr. Yung, would only hire "Korean meat cutters."

50.

As a result of the continued shortage of Meat Department meat cutting employees during the relevant time period, Mr. Abney spent the entirety of his working hours on any given work day cutting and preparing meat, servicing customers, filling customer orders, and tending to the routine upkeep of the Meat Department at Defendant MegaMart, Inc.

51.

Of these tasks, Mr. Abney spent the vast majority of the time solely cutting and preparing meat.

52.

Any time Mr. Abney spent performing duties or tasks other than those named in Paragraphs 50-51 above was de minimis, and extremely rare.

53.

In fact, Mr. Abney spent so much of his time performing the same repetitive task of operating the meat cutting machine and cutting the same selection of meat, day in and day out, during the shifts he worked while purportedly acting as the Meat Department Manager, that he began to develop the symptoms of Carpal Tunnel Syndrome in his wrists.

54.

Although Mr. Abney had never previously experienced any of the symptoms of Carpal Tunnel Syndrome, the symptoms became so severe during the relevant time period that Mr. Abney had to seek medical attention.

55.

When Mr. Abney saw a doctor for these symptoms, the doctor provided him with a prescription to alleviate the symptoms, and confirmed that Mr. Abney was most likely experiencing these symptoms as a result of spending eight (8), nine (9), and sometimes ten (10) hours or more each day performing the same repetitive task of cutting meat and operating the meat cutting machine.

56.

Mr. Abney's doctor further recommended that, to avoid further exacerbating the condition, Mr. Abney should not continue performing these same tasks repeatedly every day for the length and duration that he had become routinely accustomed to during the relevant time period while employed by Defendant MegaMart.

57.

The fact that Mr. Abney spent the overwhelming majority of his working hours performing the same repetitive task of cutting meat was so well-known

throughout the Meat Department that Mr. Abney's fellow co-workers frequently joked with Mr. Abney that he "wasn't really the manager" because he was "always cutting meat."

58.

In particular, Mr. Luis Andres (hereinafter "Mr. Andres"), one of Mr. Abney's coworkers in the Meat Department who was hired by Defendant MegaMart approximately two (2) to three (3) weeks before Mr. Abney was hired on 9/25/2010, would joke with Mr. Abney that he "wasn't really the manager" because Mr. Abney regularly spent most, if not all, of his work days cutting and preparing meat.

59.

In addition to the fifty (50) hours Mr. Abney was regularly scheduled to work as part of his alleged role as Meat Department Manager, Mr. Abney was routinely required to pick-up unclaimed shifts, assuming the duties and otherwise filling in for non-exempt hourly Meat Department employees.

60.

Following his reclassification as the salaried Meat Department Manager, and for the remainder of the December 2010-January 2011 holiday season, Mr. Abney

worked for Defendant an average of seventy (70) to seventy-five (75) hours or more per week.

61.

From January 2011 until approximately August 2011, Mr. Abney worked an average of approximately sixty (60) hours or more per week.

62.

All of the hours Mr. Abney worked above fifty (50) hours per week were not part of his regularly scheduled hours, and were not otherwise recorded by Defendant.

63.

For all hours Mr. Abney worked above fifty (50) per week, Mr. Abney was verbally directed to do so by Mr. Yung.

64.

Mr. Yung would either direct Mr. Abney to come in to work additional shifts on days when Mr. Abney was otherwise not put on the schedule, or Mr. Yung would require Mr. Abney to come in early, or stay late and work for additional unscheduled time after the scheduled start and end times for Mr. Abney's shift had passed.

65.

During the relevant time period, Mr. Abney regularly worked six (6) to seven (7) days a week, frequently in shifts of thirteen (13) to fifteen (15) hours or more each day.

66.

During the relevant time period, there were many days when Mr. Abney was required to begin his day when the Meat Department opened at 7:00 a.m. and would still continue working to assist after business hours when the Meat Department closed at 9:00 p.m., having worked for the entirety of the business operating hours in between.

67.

During the period of time from December 2010 to approximately July 2011, Mr. Abney made repeated requests to management at Defendant MegaMart, Inc. to hire more Meat Cutters for the Meat Department.

68.

Mr. Abney made these requests in an effort to reduce the number of hours he would be required to work, generally, and to reduce the amount of time he would be required to spend performing the duties of a non-exempt hourly Meat Department employee.

69.

During the period of time from December 2010 to approximately July 2011, Mr. Abney also made repeated requests to Mr. Yung and the management at Defendant MegaMart, Inc. that he be compensated for the extensive number of overtime hours he was required to work while fulfilling and performing non-exempt hourly Meat Department employee duties.

70.

As a result of Mr. Abney's repeated requests that he be paid for the overtime hours he worked while performing non-exempt hourly Meat Department employee duties, Defendant MegaMart, Inc. paid Mr. Abney for fifty-one (51) hours of overtime for the Pay Period: 5/30/2011-6/12/2011.

71.

Defendant compensated Mr. Abney for the fifty-one (51) hours of overtime accrued in the 5/30/2011-6/12/2011 Pay Period at a time-and-a-half rate of $21.00 per overtime hour.

72.

As a result of Mr. Abney's repeated requests that he be paid for the overtime hours he worked performing non-exempt hourly Meat Department employee

duties, Defendant MegaMart, Inc. paid Mr. Abney for twenty-eight (28) hours of overtime for the Pay Period: 6/13/2011-6/26/2011.

73.

Defendant compensated Mr. Abney for the twenty-eight (28) hours of overtime accrued in the 6/13/2011-6/26/2011 Pay Period at a time-and-a-half rate of $21.00 per overtime hour.

74.

Mr. Abney was not compensated for any of the overtime hours he worked performing non-exempt hourly Meat Department employee duties prior to the 5/30/2011-6/27/2011 Pay Periods, despite having made repeated requests that Defendant MegaMart, Inc. compensate him for this time.

75.

Despite his repeated requests, Mr. Abney was not compensated for any of the overtime hours he worked performing non-exempt hourly Meat Department employee duties from 6/27/2011 through 7/25/2011, despite having made repeated requests that Defendant MegaMart, Inc. compensate him for this time.

76.

On or about July 25, 2011, Defendant reclassified Mr. Abney as a non-exempt hourly Meat Department employee and reduced the number of hours Mr.

Abney worked to forty (40), and later down to approximately twenty (20) hours per week.

77.

When Defendant MegaMart began systematically reducing the number of hours Mr. Abney worked, Defendant constructively discharged Mr. Abney.

78.

From July 25, 2011, through the conclusion of Mr. Abney's employment with Defendant on or about September 15, 2011, Mr. Abney was paid as a non-exempt hourly Meat Department employee, and received overtime compensation for any of the hours over forty (40) he worked during that period of time.

79.

Based on his personal records and memory, Mr. Abney estimates in good faith that he worked a minimum of nine-hundred thirty-two (932) hours of overtime during the relevant time period.

80.

On the occasions detailed in Paragraphs 36-39 and 41, above, Mr. Abney was compensated for his overtime hours at a time-and-a-half rate of $21.00 per hour.

81.

From December 2010 through July 2011, as part of his provided salary, Mr. Abney was compensated for his hours of overtime worked between forty (40) and fifty (50) per week at a regular rate of $14.00 per hour; and not at the time-and-a-half overtime wage differential required by FLSA §7, 29 U.S.C. §207.

82.

During Mr. Abney's employment with Defendant, Mr. Abney was not paid the overtime wage differential required by FLSA §7, 29 U.S.C. §207 on all other occasions that Mr. Abney worked over forty (40) hours in a workweek.

## V. <u>Violation of the Overtime Wage Requirement of the Fair Labor Standards Act</u>

83.

Defendant has violated FLSA §7, 29 U.S.C. §207, by failing to pay overtime wages for time that Plaintiff worked in excess of forty (40) hours in a workweek.

84.

Defendant suffered and permitted Plaintiff to routinely work more than forty (40) hours per week without overtime compensation.

85.

Defendant's actions, policies and/or practices violate the FLSA's overtime requirement by regularly and repeatedly failing to compensate Plaintiff at the required overtime rate.

86.

Defendant knew, or showed reckless disregard for the fact that it failed to pay Plaintiff overtime compensation in violation of the FLSA.

87.

Defendant failed to accurately report, record and/or preserve records of hours worked by Plaintiff, and thus has failed to make, keep and preserve records with respect to each of their employees sufficient to determine their wages, hours and other conditions and practices of employment, in violation of the FLSA.

88.

Defendant's conduct was willful and in bad faith.

89.

Having observed Plaintiff's willingness to work long hours, Defendant MegaMart offered Plaintiff the promotion to a salaried position in an attempt to exploit Plaintiff's willingness to work long hours and avoid paying Plaintiff the

overtime differential he regularly received during the first three (3) months of his employment with Defendant in so doing.

90.

Pursuant to FLSA §16, 29 U.S.C. §216, Plaintiff brings this lawsuit to recover the overtime wage differential, liquidated damages in an equal amount, attorneys' fees, and the costs of this litigation.

## VII.  Prayer for Relief

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(A)   Grant Plaintiff a trial by jury as to all triable issues of fact;

(B)   Enter judgment awarding Plaintiff unpaid wages pursuant to the FLSA §7, 29 U.S.C. §207, FLSA § 6, 29 U.S.C. § 206(d), liquidated damages as provided by 29 U.S.C. §216, pre-judgment interest on unpaid wages pursuant to 29 U.S.C. §216, and court costs, expert witness fees, reasonable attorneys' fees as provided under FLSA §16 and all other remedies allowed under the FLSA; and,

(C)   Grant declaratory judgment declaring that Plaintiff's rights have been violated;

(D)   Award Plaintiff such further and additional relief as may be just and appropriate.

Respectfully submitted this 10th day of August, 2012.

**BARRETT & FARAHANY, LLP**

 /s/ Elizabeth L. Brown
Elizabeth L. Brown
Georgia Bar No. 940372
Benjamin F. Barrett
Georgia Bar No. 039586
Attorneys for Glenn Abney

1100 Peachtree Street
Suite 500
Atlanta, Georgia 30309
(404) 214-0120
(404) 214-0125 facsimile
lbrown@bf-llp.com
ben@bf-llp.com